**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Mary Ann Whipple
United States Bankruptcy Judge

Dated:  August 19 2013

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| In Re: | Case No.: 09-37696 |
| Monte Palazzola and Lisa Palazzola, | Chapter 7 |
| | Adv. Pro. No. 10-3254 |
| Debtors. | |
| | Hon. Mary Ann Whipple |
| Monte Palazzola, et al., | |
| Plaintiffs, | |
| v. | |
| City of Toledo, | |
| Defendant. | |

### MEMORANDUM OF DECISION AND ORDER

This adversary proceeding is before the court on Defendant's Motion for Summary Judgment ("Motion") [Doc. # 92], Plaintiffs' opposition [Doc. # 93], Defendant's reply [Doc. # 96], and Plaintiffs' sur-reply [Doc. #100].  Defendant's motion addresses Plaintiffs' action asserting that Defendant is in contempt of court for violating the discharge order entered in Plaintiffs' underlying Chapter 7 case, which is the only issue remaining in this proceeding.[1]  Also before the court is Plaintiffs' Motion to Strike

---

[1] Plaintiffs alleged five separate counts in their amended complaint, four of which have been dismissed for lack of jurisdiction or failure to state a claim upon which relief can be granted. [*See* Doc. # 48].

Defendant's Exhibits. [Doc. # 105]. The court held a hearing on the Motion to Strike that both counsel for Plaintiff and Defendant attended in person.

The district court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §1334(b) as a civil proceeding arising under, arising in, or related to a case under Title 11. This proceeding has been referred to this court by the district court under its general order of reference. 28 U.S.C. § 157(a); General Order 2012-7 of the United States District Court for the Northern District of Ohio. Proceedings to determine a violation of a discharge order are core proceedings that the court may hear and determine. 28 U.S.C. § 157(b)(1) and (b)(2)(O).

Having considered the Motion and the parties' briefs in support of their respective positions, for the reasons that follow, Defendant's Motion will be denied and the court will grant Plaintiff Lisa Palazzola summary judgment in part.[2] Trial will be scheduled on the remaining issues as set forth in this opinion, and Plaintiffs' Motion to Strike will be denied as moot.

### **OBJECTIONS TO EXHIBITS**

In its reply, Defendant argues that none of Plaintiff's exhibits attached to the opposition to Defendant's motion and support documents filed at Doc. # 94 may be considered on summary judgment as none are authenticated. *See Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) (stating that unauthenticated documents do not meet the requirements of Rule 56 and must be disregarded). However, Plaintiff's exhibits 2 and 3 are the Chapter 7 petition and discharge order filed in Plaintiff's underlying bankruptcy case, exhibit 9 is a copy of the docket in that case, and exhibit 6 and 7 are documents filed in this proceeding in connection with Defendant's opposition to Plaintiffs' motion for preliminary injunction. The court may take judicial notice of the contents of each of those documents.[3] In addition, the affidavit attached as an exhibit to Plaintiff's sur-reply provides authentication of exhibits 10 and 15, [Doc. # 100, attached Baron Aff], and exhibit 8 is a transcript of the December 15, 2010, hearing on Plaintiffs' motion for preliminary injunction that has been filed in this proceeding and that is certified as being a true transcription of the recording of that hearing, [Doc. # 94, Ex. 8, p. 175]. Portions of the December 15, 2010, hearing transcript are offered by both Plaintiff and Defendant in support of their respective positions. The

---

[2] By separate order, the court denied Plaintiffs' motion for Lisa Palazzola to be substituted as plaintiff for Monte Palazzola after his death and dismissed the contempt action to the extent held by him. The court's reference to "Plaintiff" in the remaining portions of this opinion are a reference to Lisa Palazzola, the only remaining Plaintiff in this proceeding.

[3] The court takes judicial notice of the contents of its case docket. Fed. R. Bankr. P. 9017; Fed. R. Evid. 201(b)(2); *In re Calder*, 907 F.2d 953, 955 n.2 (10th Cir. 1990); *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1171-72 (6th Cir. 1979) (stating that judicial notice is particularly applicable to the court's own records of litigation closely related to the case before it).

2

court finds all of the foregoing exhibits to be proper Rule 56 evidence. However, the following documents are not authenticated and, thus, will be disregarded by the court in considering the matter before it: Ex. ## 1, 4, 5, 11, 13, 14 and 16 [exhibits 1, 4, 5, 11 and 14 are attached to Doc. # 93 and exhibits 13 and 16 are attached to Doc. # 94]. Likewise, the court will disregard the following unauthenticated documents attached to Plaintiff's sur-reply: Ex. ## 18, 19, 20a, 20b, 21, 22, 23, 24 [all attached to Doc. # 100].

Because the court finds that Defendant is not entitled to summary judgment even when considering Defendant's exhibits submitted in support of its Motion, the court will deny Plaintiffs' Motion to Strike Defendant's Exhibits as moot.

## **FACTUAL BACKGROUND**

Unless otherwise noted, the court finds the following facts are undisputed. Defendant City of Toledo Department of Public Utilities ("the City") provides water and sewer utility services to Plaintiff and also did so on a prepetition basis. On November 3, 2009, Plaintiff, together with her husband, Monte Palazzola, filed a Chapter 7 bankruptcy petition. [Def. Ex. A, p. 29-30; Case No. 09-37396]. The City was included as a creditor on Plaintiff's bankruptcy schedules and it received notice of the commencement of the case. [Def. Ex. A, p. 30; Pl. Ex. 8, p. 78-79; Case No. 09-37396, Doc. 9, p. 3]. On February 17, 2010, the court entered an order granting Plaintiffs a discharge, together with a document entitled Explanation of Bankruptcy Discharge in a Chapter 7 Case ("Explanation of Discharge"). [Case No. 09-37396, Doc. # 22]. The Explanation of Discharge specifically instructs that "[t]he discharge prohibits any attempt to collect from the debtor a debt that has been discharged. For example, a creditor is not permitted to contact a debtor by mail, phone, or otherwise . . . or to take any other action to collect a discharged debt from the debtor." [*Id*. at 2]. Notice of both the order and the Explanation of Discharge was sent to the City on February 19, 2010, [*id.*, Doc. # 23], and no return mail has been received by the court. In its Motion, the City concedes that it received notice of Plaintiffs' discharge.

A new public utility account (Acct. No. ending in 0469) was opened on Plaintiff's behalf after their Chapter 7 petition was filed that covers the period of November 4, 2009, to August 12, 2010. [Def. Ex. E, Kalka Aff., ¶ 5]. Lynne Moton ("Moton"), a "legal technician" employed by the City, testified at the December 15, 2010, hearing on Plaintiffs' motion for preliminary injunction and identified the exhibits A through D offered at that hearing and about which she testified as invoices that the City sends to its public utilities customers, and specifically, as invoices for utility services received by Plaintiffs. [Pl. Ex. 8, pp. 87-100]. The City sent Plaintiff an invoice for total current charges of $147.75 that stated the amount was due

by February 8, 2010. [*Id*. at 29, 95].[4]  The City sent a second invoice to Plaintiff for a total amount due of $297.65 that showed the amount was due by May 7, 2010. [*Id*. at 92].  For the next billing period, the City sent Plaintiff an invoice showing that she owed $5,382.76 and that such amount was due by August 12, 2010. [*Id*.].  Moton testified that Plaintiff did not incur over $5,000.00 worth of utility services between the May 7 and August 12, 2010 billing periods. [*Id*. at 93].  Rather, she testified that the approximately $5,000.00 of additional charges were sewer charges that were owed on prepetition accounts. [*Id*.].  The City sent a final invoice for a total amount due of $5,180.94, with a due date of September 13, 2010. [*Id.* at 92]. Moton testified that, generally, a disconnection notice is sent to the customer indicating the amount due. [*Id.* at 109-10].  However, she had no personal knowledge of such notice being sent to Plaintiff, [*Id.*], and no such notice has been submitted in support of either party's arguments on summary judgment.[5]

It is undisputed that the City caused Plaintiff's water and sewer services to be terminated on or about August 12, 2010. [*See* Doc. # 92, Def. Motion for Summary Judgment, p. 2].  What occurred thereafter is in dispute.  Plaintiff testified at the December 15, 2010, preliminary injunction hearing that she personally went to the Department of Public Utilities on three separate occasions in an attempt to resolve the matter, and on two occasions spoke with the "supervisor." [Pl. Ex. 8, pp. 20, 22, 23].  According to Plaintiff, the "supervisor" told her that the $5,000.00 in sewer charges was not discharged in her bankruptcy and that she had to pay that amount in order to have the water turned on again. [*Id.* at 20, 23].  Moton identified the Customer Service Supervisor as Doris Kalka. [*Id.* at 75].  In her affidavit, Kalka denies ever demanding that Plaintiff pay $5,000.00 in pre-petition charges. [Def. Ex. E, ¶ 16].  It is undisputed, however, that no corrected invoices on Plaintiff's account ending in 0469 were sent to Plaintiff after the invoice showing a due date of September 13, 2010. [Pl. Ex. 8, p. 98].

Pursuant to this court's order granting Plaintiffs' motion for preliminary injunction, utility services were reinstated at Plaintiff's home in December 2010. [*See* Doc. # #17 & 46, p. 2].  Although the parties stipulated that the unpaid postpetition charges for utility services as of January 26, 2011, totals $687.10, [Doc. # 46], there is a dispute, and the evidence is unclear, as to the amount that was actually due for postpetition utility services at the time of shut off on August 12, 2010. [*See, e.g., Id.* at 94-104].

---

[4] The invoices described in this paragraph are all in Plaintiff Lisa Palazzola's name, only.

[5] Although Plaintiff has attached a document to her Motion for Sanctions entitled Final Notice Prior to Disconnection, the document is not authenticated and is, thus, does not constitute proper Rule 56 evidence. [*See* Doc. # 106].

4

**LAW AND ANALYSIS**

I. **Summary Judgment Standard**

Under Rule 56 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, summary judgment is proper only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In reviewing a motion for summary judgment, however, all inferences "must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-88 (1986). The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, "and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). With respect to issues on which the nonmoving party bears the burden of proof, the burden on the moving party may be discharged by pointing out to the court that there is an absence of evidence to support the nonmoving party's case. *Id.* at 325. Where the moving party has met its initial burden, the adverse party "may not rest upon the mere allegations or denials of his pleading but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue for trial exists if the evidence is such that a reasonable factfinder could find in favor of the nonmoving party. *Id.*

In addition, "Federal Courts have long recognized that if there is no genuine issue as to any material fact the court may enter summary judgment, *sua sponte*. There is no requirement that there be a cross-motion or other pending motion seeking such summary judgment." *In re Ward*, 300 B.R. 692, 695 (Bankr. S.D. Ohio 2003) (quoting *Ledford v. Tiedge (In re Sams)*, 106 B.R. 485, 491 (Bankr. S.D. Ohio 1989)); *see In re Hunt*, 65 B.R. 627 (Bankr. M.D. Fla. 1986) (holding it appropriate for the court to enter summary judgment in favor of the nonmoving party if the court determines that there are no genuine issues of material fact and nonmoving party is entitled to judgment as a matter of law); *see also* Fed. R. Civ. P. 56; Fed. R. Bankr. P. 7056.

II. **Violation of the Discharge Order/Discharge Injunction**

A bankruptcy discharge operates as an injunction against any act "to collect, recover or offset any [discharged] debt as a personal liability of the debtor. . . ." 11 U.S.C. § 524(a)(2). The remedy for violation of the discharge injunction and, thus, the order granting the discharge, lies in a civil contempt proceeding. *Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 421 (6th Cir. 2000). The party alleging such contempt,

5

in this case, Plaintiff, must prove by clear and convincing evidence that "(1) the alleged contemnor had knowledge of the order which he is said to have violated; (2) the alleged contemnor did in fact violate the order; and (3) the order violated must have been specific and definite." *Hunter v. Magack (In re Magack)*, 247 B.R. 406, 410 (Bankr. N.D. Ohio 1999) (*citing Glover v. Johnson*, 138 F.3d 229, 244 (6th Cir.1998)). In the context of the discharge injunction, this means that a debtor must demonstrate that the creditor "(i) violated the discharge injunction (and thus the order granting the discharge) and (ii) did so with knowledge that the injunction was in place." *Gunter v. Kevin O'Brien & Assocs. Co. LPA (In re Gunter)*, 389 B.R. 67, 72 (Bankr. S.D. Ohio 2008). In addition, to impose contempt sanctions, the court must find that the act constituting a violation of the discharge injunction was willful. "A willful violation does not require any specific intent. Rather, the question is simply whether, having knowledge of the . . . discharge injunction, the creditor's actions were intentional." *McCool v. Beneficial (In re McCool),* 446 B.R. 819, 823 (Bankr. N.D. Ohio 2010); *In re Martin*, 474 B.R. 789 (Table), 2012 WL 907090, *6, 2012 Bankr. LEXIS 906, *15 (B.A.P. 6th Cir. March 7, 2012).

The City does not dispute that it received notice of Plaintiff's discharge. The court's order granting Plaintiff a discharge, together with a document explaining the effect of a discharge, was sent to the City on February 17, 2010. The City argues, however, that there is no evidence that it willfully violated the discharge injunction. The court disagrees.

There is no dispute that the City sent two invoices to Plaintiff after her discharge was entered that showed one "amount due" that included prepetition sewer charges of approximately $5,000.00. The City does not argue that it inadvertently included those charges on the postpetition invoices. And the evidence indicates otherwise as it failed to provide Plaintiff with corrected invoices even after Plaintiff informed it that the invoices included prepetition charges. In addition, on August 24, 2010, counsel for the City responded to an email notifying the City that attempts to collect the prepetition sewer charges are violations of the discharge injunction by stating that "[u]tility services under Acct. No. [ending in 0469] were terminated on or about August 12, 2010, for non-payment " and that "[t]he delinquency is $5,382.76." [Pl. Ex. 10, pp. 1, 3]. The City's correspondence explains that the "sewer liens from [Plaintiff's prepetition accounts] were transferred on or about June 7, 2010 to Acct. No. [ending in 0469] in accordance with the Toledo Municipal Code" and states that such liens "were not discharged on February 17, 2010, . . . and the delinquency shown for Acct. No. [ending in 0469] remains due and owing." [*Id.* at 3-4].

To the extent the City argues that inclusion of the prepetition sewer charges on invoices sent to Plaintiff was proper since such charges constitute a lien on the real property served by the sewer connection,

6

*see* Ohio Rev. Code § 729.49, its argument is not well taken. Although it is true, as the City argues, that liens are not extinguished by a bankruptcy discharge and may be enforced postpetition, they may be enforced *in rem* only. *Johnson v. Home State Bank*, 501 U.S. 78, 84 (1991)("[A] bankruptcy discharge extinguishes only one mode of enforcing a claim–namely an action against the debtor *in personam* –while leaving intact another–namely an action against the debtor *in rem*."). The invoices sent to Plaintiff by the City showing that prepetition sewer charges were "due" constitute attempts to collect the debt as a personal liability. They are not simply informational in nature or communications made in an effort to learn about or enforce the lien for sewer charges against the property. Rather the invoices are wholly inconsistent with attempted enforcement of a statutory lien for sewer charges "that are not discharged [and] remain on the premise (house/property) as they are attached to the premise and not the contract holder." [Doc. # 92-6, Kalka Aff. ¶ 15, p. 2/2]. They are aimed squarely at demanding and getting Plaintiff as "the contract holder" to pay the charges. The court finds that there is no genuine dispute that such attempts were willful violations of the discharge injunction. *See* 11 U.S.C. § 524(a)(2); *see McCool*, 446 B.R. at 823 (stating that a willful violation of the discharge injunction may still exist even though the creditor believed its actions were lawful).

      Plaintiff also argues that the City terminating water and sewer services to her home and refusing to reconnect such services absent payment of the debt owed was a violation of the discharge injunction. There is no dispute that such services were terminated by the City as a result of Plaintiff's failure to pay. There is a dispute, however, as to what amounts were demanded of Plaintiff in order to avoid termination of utility services or to reinstate such services after they were terminated. A disconnection notice sent to Plaintiff, which, according to Moton, would state the amount due to avoid disconnection, is not in evidence. According to Plaintiff, the customer service supervisor told her that both prepetition sewer charges and postpetition utility services had to be paid, while Kalka, the customer service supervisor, avers that no such demand was ever made.

      Although it is undisputed that Plaintiff's unpaid postpetition charges for utility services as of January 26, 2011, totals $687.10, as indicated above, the evidence is unclear as to the amount, if any, that was owed on August 12, 2010, when Plaintiff's water and sewer services were disconnected. Even assuming the existence of unpaid postpetition charges at the time of the disconnection, it is not clear what impact or influence the unpaid prepetition sewer charges had on the disconnection. Although perhaps self-serving as Defendant argues, if believed, Plaintiff's testimony at the preliminary injunction hearing that she was told by the City's customer service department that she had to pay or agree to pay over $5,000.00 to reinstate

7

utility services at her residence supports a finding that unpaid prepetition sewer charges played a significant role, if not in the initial disconnection, at least in the City's decision not to reconnect water and sewer services for over four months. Because what Plaintiff was told when trying to arrange for reconnection of her water and sewer services is a material fact that is in dispute, Defendant is not entitled to summary judgment on Plaintiff's claim that disconnection of, and/or failure to reconnect, water and sewer services were willful violations of the discharge injunction.

Finally, the City argues that Plaintiff has failed to show that she suffered any actual damages. The court disagrees. If the court finds a creditor in civil contempt of its order of discharge and, thus, the discharge injunction, it may sanction the creditor by awarding compensatory damages and attorneys fees to the debtor. *Gunter*, 389 B.R. at 71; *Martin*, 2012 WL 907090 at *5, 2012 Bankr. LEXIS 906 at *14 (stating that "a debtor must prove his injury by a preponderance of the evidence"). While Plaintiff has not proven the amount of damages, her testimony at the preliminary injunction hearing regarding the living conditions in her home as a result of her water and sewer services being disconnected constitutes a compensable injury to the extent it was caused by a violation of the discharge injunction, as do her attorney fees incurred to rectify any such violation.

## CONCLUSION

The court finds no genuine dispute that the City willfully violated the discharge injunction when it sent Plaintiff invoices that included prepetition sewer charges in the amount demanded as due to be paid by Plaintiff personally. Plaintiff is, therefore, entitled to partial summary judgment on that issue. There is a factual dispute, however, regarding whether or not such prepetition charges played a role in the City's decision to terminate Plaintiff's water and sewer services on August 12, 2010, and to refuse to reconnect such services for over four months and, thus, also as to the extent and amount of any damages incurred by Plaintiff. For these reasons, the City's Motion for Summary Judgment will be denied.

**THEREFORE**, for the foregoing reasons, good cause appearing,

**IT IS ORDERED** that Plaintiff be, and hereby is, **GRANTED** partial summary judgment on the sole issue of the City's violation of the discharge injunction in sending her invoices with amounts due that included prepetition sewer charges; and

**IT IS FURTHER ORDERED** that the City's Motion for Summary Judgment [Doc. # 92] be, and hereby is, **DENIED**; and

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Strike Defendant's Exhibits [Doc. # 105]

8

be, and hereby is, **DENIED as moot**; and

**IT IS FINALLY ORDERED** that a further pretrial conference will be held on **September 5, 2013, at 1:30 o'clock p.m.** at which time a trial date will be set.

###